UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LINDA S. DICK**,                          Case Number 4:13 CV 524

    Plaintiff,                        Judge Donald C. Nugent

    v.                                REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                        Magistrate Judge James R. Knepp II

## INTRODUCTION

Plaintiff Linda S. Dick filed a Complaint (Doc. 1) against the Commissioner of Social Security seeking judicial review of the Commissioner's decision to deny supplemental security income (SSI). The district court has jurisdiction under 42 U.S.C. § 1383(c)(3).

This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated March 11, 2013). For the reasons stated below, the undersigned recommends the Commissioner's decision be affirmed.

## PROCEDURAL BACKGROUND

Plaintiff filed an application for SSI, alleging disability since December 4, 2009[1] (Tr. 159-63, 175) due to a learning disability (Tr. 117, 179). However, she indicated she was taking medication for bipolar disorder, depression, and anxiety. (Tr. 182). Plaintiff's claims were denied initially (Tr. 90-91) and upon reconsideration (Tr. 126-32). Plaintiff requested a hearing before an administrative law judge (ALJ). (Tr. 79). After a hearing, where Plaintiff, her attorney, and a

---

1. Plaintiff filed a prior application for SSI on April 7, 2008. (Tr. 95). On December 3, 2009, a prior ALJ found Plaintiff was not disabled. (Tr. 95-103). Pursuant to *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997) and AR 98-4(6), an ALJ is bound by the residual functional capacity (RFC) determination found in the previous ALJ's decision absent new and material evidence. In the instant case, the ALJ found there was new and material evidence that warranted a *de novo* determination of Plaintiff's RFC. (*See* Tr. 25).

vocational expert (VE) appeared, the ALJ denied Plaintiff's claims. (*See* Tr. 22, 38). The ALJ found Plaintiff's severe impairments did not preclude her from performing a limited range of work in the national economy. (Tr. 22-33). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 416.1455, 416.1481. On March 11, 2013, Plaintiff filed the instant case.[2] (Doc. 1).

**FACTUAL BACKGROUND**

**Vocational History and Personal Background**

Born January 3, 1978, Plaintiff was 33 years old on the date of the ALJ hearing held December 2, 2011. (Tr. 22, 159). Plaintiff lived with her uncle, attended high school until the tenth grade, and has past, non-substantial work experience as a cashier. (Tr. 55, 180-81, 187).

Concerning daily activity, Plaintiff reported she watched television, ate snack food, and read. (Tr. 200-04). In disability reports, Plaintiff said she prepared meals, washed laundry and dishes, and grocery shopped. (Tr. 201-04, 211, 230-32). However, at the ALJ hearing she said her uncle "does all that." (Tr. 56). Plaintiff also testified she did not watch television that often despite prior reports that she watched television all day. (Tr. 57 *contra* Tr. 200, 204). She had no problems attending to personal care and did not need reminders to take medication. (Tr. 201-03, 230-32). Plaintiff said she had a hard time getting along with others, stuttered when she talked, and needed reminding to complete tasks. (Tr. 205). Plaintiff had a driver's license but it was suspended. (Tr. 212, 232).

Plaintiff testified she could not work because of panic attacks. (Tr. 51). Plaintiff said she began experiencing panic attacks "periodically" in the last seven months. (Tr. 53). She also said she had mood swings and feelings of depression and anger. (Tr. 52-53, 60). At five-foot three-

---

2. Plaintiff filed a subsequent application for SSI in which she was awarded disability. While the Court is aware of this new decision, by its own terms it is based on "new and material evidence affecting the findings" and does not apply to the time period at issue. (Doc. 18).

2

inches tall and 270 pounds, the ALJ noted Plaintiff was obese. (Tr. 46-47). Plaintiff testified her 100 pound weight gain in the past year was due to side-effects from medication. (Tr. 47).

**Medical Evidence**

On September 23, 2009, prior to Plaintiff's alleged onset date, Heather Shahan, CNS, completed a "Functional Assessment of Mental Disorders," based on Plaintiff's diagnoses of bipolar disorder and social phobia. (Tr. 247-50). Ms. Shahan indicated Plaintiff had severe impairments in all areas of social functioning; a slight impairment in her ability to carry through simple instructions and complete uncomplicated tasks independently; moderate to severe impairments in areas of sustained concentration and persistence; moderate to severe impairments in adapting; and a slight impairment in her ability to tolerate low-stress work on a daily basis. (Tr. 247-49).

According to the record, Plaintiff began treatment with Turning Point in 2006 when she was released from prison for child endangerment, menacing, assault, and disorderly conduct. (*See* Tr. 278, 282; Tr. 270-82). Treatment notes from 2006 indicated Plaintiff was depressed and anxious because her children were taken by Children's Services and she was just released from prison. (Tr. 260-82).

During the relevant time period, Plaintiff saw Ms. Shahan once a month at Turning Point. In 2009, Plaintiff generally presented for medication management and did not complain of side effects. (Tr. 300-08). On each occasion she demonstrated casual appearance, pleasant demeanor, and clear speech. (Tr. 300-09, 342-57). In January 2010, Plaintiff reported she was "doing well" on her medication regimen and had a nice holiday. (Tr. 297). In February 2010, Plaintiff reported having anxiety all day due to conflicts with her uncle. (Tr. 354). In March 2010, Plaintiff said she "felt better" but still experienced some anxiety, so her medication was adjusted, and in April

3

2010, she felt less anxious and depressed but would get irritable as the day progressed. (Tr. 291, 348, 350-51). In June 2010, Plaintiff felt less agitation but she was anxious and angry at times. (Tr. 342).

In August 2010, state agency psychologist Aracelis Rivera, Psy.D., reviewed the medical evidence and assessed Plaintiff's RFC. (Tr. 381-93). Dr. Rivera adopted the prior ALJ's RFC finding, which is substantially the same as the current ALJ's RFC finding. However, in the instant case, the ALJ provided for further limitations precluding Plaintiff from climbing ladders, ropes, and scaffolds. (*Compare* Tr. 98, *with* Tr. 30). Dr. Rivera found Plaintiff had moderate restrictions concerning activities of daily living; moderate difficulties maintaining social functioning; moderate difficulties maintaining concentration, persistence, or pace; and no episodes of decompensation. (Tr. 391). In making these findings, Dr. Rivera noted Plaintiff was on medication for depression and anxiety after being in prison for six months due to child endangerment and sent to court-ordered counseling. (Tr. 397, 399). Dr. Rivera also discussed treatment records in March 2010, which revealed Plaintiff had a depressed mood, full affect, casual appearance, pleasant demeanor, clear speech, and appropriate behavior. (Tr. 397). She also observed Plaintiff's medication had been adjusted over the last few months, and treatment notes indicated she was less agitated. (Tr. 397).

In July 2010, Plaintiff told Ms. Shahan she continued to be angry, irritable, and agitated. (Tr. 437). However, the following month, Plaintiff reported Invega helped with her anxiety and agitation, without side effects. (Tr. 435). On both occasions, Plaintiff presented with casual appearance, pleasant demeanor, appropriate behavior, fair insight, and clear speech. (Tr. 435, 437).

On September 8, 2010, Plaintiff reported she was upset about being denied disability. (Tr. 433). Again, Plaintiff was pleasant, casually dressed, and had clear speech. (Tr. 433). Her thought process, content, and perception were normal, and her behavior appropriate, affect full, mood anxious, and insight and judgment fair. (Tr. 433).

That same day, Ms. Shahan completed a functional capacity assessment. (Tr. 402-03). Ms. Shahan checked a box to indicate Plaintiff was markedly limited in her abilities to understand and remember detailed instructions; carry-out detailed instructions; maintain attention and concentration for an extended period; perform activities within a schedule; sustain routine without supervision; complete a normal workday or workweek without interruption; accept instruction and respond appropriately to criticism from supervisors; get along with coworkers; respond appropriately to changes in the work setting; use public transportation; and set realistic goals or make plans independently. (Tr. 402). She also assessed that Plaintiff was moderately limited in her abilities to remember work-like procedures, understand, remember, and carry out very short and simple instructions; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; and be aware of normal hazards and take precautions. (Tr. 402). Ms. Shahan checked a box to indicate Plaintiff was unemployable and listed Plaintiff's bipolar diagnosis and medications, which included Invega, Paxil, Inderal, and Trazodone. (Tr. 402-03).

In October 2010, Plaintiff reported increased anger, agitation, and anxiety over the past month as she continued to "wait to hear about [her] disability" claim. (Tr. 431). She reported no side-effects from medication. (Tr. 431). In the following month, Plaintiff reported increased anxiety, but by February 2011, she said Buspar had been helpful and she was sleeping well. (Tr.

5

425, 428-29). Again, on each occasion, Plaintiff was pleasant, casually dressed, had clear speech, and her thought process, content, and perception were normal. (Tr. 425, 427, 429).

On February 8, 2011, Ms. Shahan filled out a "Functional Assessment of Mental Disorders" form; Brian Sullivan, M.D., co-signed this form. (Tr. 415-16). Ms. Shahan found Plaintiff was slightly impaired in her abilities to relate to the general public and maintain socially appropriate behavior; use appropriate judgment in a work setting; carry through on simple instructions and complete uncomplicated tasks independently; remember locations and workday procedures/instructions; care for herself; and tolerate low-stress work on a sustained basis. (Tr. 415-16). Ms. Shahan assessed the remaining areas of Plaintiff's functioning as moderate, and assessed no work-related abilities as marked. (Tr. 415-16). She noted Plaintiff did not respond well to stress and assigned her a global assessment of functioning (GAF) score of 52.[3] (Tr. 416).

In March 2011, Plaintiff reported she was grieving the death of her aunt, which increased her symptoms of depression and anxiety. (Tr. 423). On examination, Plaintiff's speech, demeanor, and appearance were the same. (Tr. 423). As of May 2011, Plaintiff was "doing better" but continued to have some agitation. (Tr. 421). In June 2011, Plaintiff reported Topomax started to help. (Tr. 419).

On April 6, 2011, Ms. Shahan completed another "Functional Assessment of Mental Disorders" form; Brian Sullivan, M.D., also co-signed this form. (Tr. 413-14). Ms. Shahan repeated her assessment from February 2011 that Plaintiff had slight impairments in her abilities to relate to the general public and maintain socially appropriate behavior; use appropriate

---

3. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32–33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 52 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *DSM-IV-TR*, at 34.

6

judgment in a work setting; carry through on simple instructions and complete uncomplicated tasks independently; remember locations and workday procedures/instructions; care for herself; and tolerate low-stress work on a sustained basis. (Tr. 415-16). Ms. Shahan again assessed the remaining areas of functioning as moderate, and assessed no work-related abilities as marked. (Tr. 413-14). However, she assigned a new GAF score of 39.[4] (Tr. 414).

**VE Testimony and ALJ Decision**

The ALJ asked the VE to assume a hypothetical individual with a limited education and no past relevant work experience who could perform work at all exertional levels but only occasionally climb ramps and stairs; perform simple, routine, repetitive tasks not in a fast-paced production environment, involving only simple work-related decisions, relatively few work place changes, a low-stress environment, and no independent decision-making; no interaction with the public; and only superficial interaction with co-workers and supervisors. (Tr. 63-64). The VE responded that this individual could perform work as a sorter, machine feeder, and marker. (Tr. 64). The ALJ asked the VE to assume a second hypothetical individual which mirrored the first, but provided further limitations in that the individual could only occasionally balance, stoop, kneel, crouch, or crawl and could not climb ladders, ropes, or scaffolds. (Tr. 65). The VE responded that this individual could perform the previously mentioned positions. (Tr. 65).

Despite the severe impairments of bipolar disorder, borderline intellectual functioning, and obesity, the ALJ found Plaintiff could perform work in the national economy. (Tr. 27, 30). In doing so, the ALJ found Plaintiff did not meet or medically equal a listing, including listing 12.06 for anxiety-related disorders. Ultimately, the ALJ found Plaintiff had the RFC to perform

---

4. A GAF score of 39 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work, child frequently beats up younger children, is defiant at home, and is failing at school). *DSM-IV-TR*, *supra* at 34.

work consistent with the limitations presented in his second hypothetical question to the VE. (*See* Tr. 30, 63-65).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

8

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id*. The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

### DISCUSSION

Plaintiff argues she cannot perform even sedentary work due to her non-exertional limitations. (Doc. 14, at 6). As support, Plaintiff cites Ms. Shahan and Dr. Sullivan's mental health opinions. Thus, the Court interprets this argument as an objection to the ALJ's RFC assessment, and the ALJ's consideration of those opinions as it relates to the same. Plaintiff also argues the ALJ erred by finding she did not meet listing impairment 12.06 – anxiety-related disorders. (Doc. 14, at 7).

*RFC Assessment*

A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). An ALJ must consider all symptoms and the extent to which those symptoms are consistent with the objective medical evidence. § 416.929. An ALJ must also consider and weigh medical opinions. § 416.927. When a claimant's statements about symptoms are not substantiated by objective medical evidence, the ALJ must make a finding regarding the credibility of the statements based on a consideration of the entire record. Social Security Ruling (SSR) 96-7p, 1996 WL 374186, *1.

Here, the ALJ found Plaintiff had the RFC to perform work at all exertional levels but had non-exertional limitations. (Tr. 98). In doing so, the ALJ gave little weight to the functional assessment reports authored by Plaintiff's therapist, Ms. Shahan, and co-signed by Dr. Sullivan. (Tr. 257-50, 402-03, 413-16). The ALJ assigned little weight to the assessments because Ms. Shahan's treatment notes did not support such severe limitations, the opinions were inconsistent with the record, and the GAF rating of 39 did correlate with the concurrent assessment indicating moderate limitations, as opposed to marked limitations. (Tr. 29-30). The ALJ did credit Plaintiff's symptoms; however he concluded they were not so severe as to preclude all work. (Tr. 32). Hence, in response to Plaintiff's consistent complaints of anxiety, agitation and mood swings, the ALJ limited her to work that was simple, routine, and repetitive; not in a fast-paced production environment; required simple work-related decisions; had relatively few work-place changes and low-stress; and had no interaction with the general public and superficial interaction with supervisors and coworkers. (Tr. 30). Indeed, the VE indicated the jobs assigned to Plaintiff involved working alone. (Tr. 67).

Plaintiff is incorrect in asserting that the ALJ erred in his treatment of Ms. Shahan and Dr. Sullivan's "opinions" for a variety of reasons. (Doc. 14, at 7). First, the RFC assessment is an issue reserved to the Commissioner, and an ALJ is not required to accept the opinion of a medical source when that opinion is inconsistent with other evidence or not well-supported. § 416.927; SSR 96-5p, 1996 WL 374183.

Next, Ms. Shahan is not an acceptable medical source under the agency's regulations; therefore, her opinion is not entitled to controlling weight. §§ 416.913(a)(1), (2). While Dr. Sullivan signed off on two of Ms. Shahan's assessments, there is no evidence Dr. Sullivan was present at any examinations related to the assessments, nor does the record indicate Dr. Sullivan ever treated Plaintiff, let alone had an ongoing treatment relationship with her. *Benjamin v. Commissioner*, 2013 WL 3776792, at *4 (N.D. Ohio) (Court would not consider an occupational therapist's assessment a doctor's opinion for purposes of the treating physician rule when the doctor merely signed-off on the therapist's assessment and the record did not indicate the physician was present for the examination.). Indeed, other than co-signing Ms. Shahan's assessments, the record does not suggest Dr. Sullivan was involved in Plaintiff's care. 20 C.F.R. § 416.902; *Benjamin*, 2013 WL 3776792, at *4 ("To be a treating physician, there must be an ongoing treatment relationship and the evidence must show a frequency of visits consistent with accepted medical practice for the type of treatment required for the particular condition(s)."). Regardless, as Defendant points out, the forms authored by Ms. Shahan and co-signed by Dr. Sullivan assess no more than moderate limitations, which is consistent with the ALJ's RFC finding. (*See* Tr. 30, 413-16).

Plaintiff also cites to Ms. Shahan's GAF score assessment of 39 to support she was disabled. (Doc. 14, at 6-7). A GAF score in this range indicates a "major impairment in several

areas." *DSM-IV-TR*, *supra* note 3. However, as the ALJ pointed out, this GAF score does not appear to be based on any clinical findings or mental status examinations, nor was it consistent with its own contemporaneous opinion indicating only moderate symptoms. (*See* Tr. 31, 413-14). Indeed, it was permissible for the ALJ to discount the GAF score for those reasons. *Price v. Comm'r of Soc. Sec.*, 342 F. App'x 172, 175-76 (6th Cir. 2009) (an opinion is only entitled to controlling weight if it is well-supported by the objective medical evidence).

Moreover, it is questionable whether the GAF score was accurately assessed given that the only contradiction between the two identical assessments was the GAF scores – one with a 52 (Tr. 416), and the other a 39 (Tr. 414). Indeed, both forms reflect the same moderate limitations; limitations squarely at odds with a GAF score of 39. (*Compare* Tr. 413-14 *with* Tr. 415-16). As Defendant points out, if Plaintiff were truly functioning at a level to warrant a GAF score of 39, it would logically follow she would be assessed with marked, as opposed to moderate and slight, limitations. (Tr. 413-14).

*Listing 12.06*

A claimant can demonstrate he is disabled by presenting "medical findings equal in severity to all the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990). For listing 12.06 – anxiety-related disorders – anxiety must be the predominant disturbance. 20 C.F.R. Part 404, subpt. P, app. 1, listing 12.04. "The required level of severity is met when the requirements in both A and B are satisfied, or when the requirements in both A and C are satisfied." *Id*.

    A. Medically documented findings of at least one of the following:

        1. Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
           a. Motor tension; or
           b. Autonomic hyperactivity; or

       c. Apprehensive expectation; or
       d. Vigilance and scanning; or

2. A persistent, irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation; or

3. Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror, and sense of impending doom occurring on the average of at least once a week; or

4. Recurrent obsessions or compulsions which are a source of marked distress; or

5. Recurrent and intrusive collections of traumatic experience, which are a source of marked distress;

AND

B. Resulting in at least two of the following:

  1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or

  3. Marked difficulties in maintaining concentration, persistence, or pace; or

  4. Repeated episodes of decompensation, each of extended duration.

OR

C. Resulting in complete inability to function independently outside the area of one's home.

20 C.F.R. Part 404, subpt. P, app. 1, listing 12.04.

Plaintiff argues she meets listing 12.06 because: 1) Ms. Shahan assigned a 39 GAF score; and 2) the state agency physician found she had "moderate" limitations with respect to activities of daily living and difficulties maintaining social functioning and concentration, persistence, or pace. (Doc. 14, at 5-7).

As explained by the ALJ, Plaintiff did not meet listing 12.06 because "no treating or examining physician [] indicated findings that would satisfy the severity requirements" of listing 12.06. (Tr. 28). Moreover, to satisfy Paragraph B criteria, a mental impairment must result in at least two categories of *marked* restrictions. 20 C.F.R. Part 404, subpt. P, app. 1, listing 12.04 (emphasis added). Thus, Plaintiff undermines her own argument by pointing to findings indicating only moderate restrictions. In addition, as explained above, the ALJ appropriately discounted Plaintiff's GAF score of 39. Accordingly, Plaintiff has not shown she met any of the criteria to satisfy listing 12.06.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the Court finds the Commissioner's decision denying SSI benefits supported by substantial evidence. The undersigned therefore recommends the Commissioner's decision be affirmed.

                                        s/James R. Knepp II
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).